This is the big day this week, and we'll start with United States v. Mitrovic. Ms. Palmer. Ms. Palmer May it please the Court, Your Honors. I, along with co-counsel Jeff Erdl, represented Mladen Mitrovic at trial, where, by way of two erroneous rulings from the district court, he was denied a meaningful opportunity to present a complete defense. First, the district court erred when it precluded Mr. Mitrovic from introducing crucial critical statements from unavailable witnesses, statements that went directly to his defense, when these statements comported with the requirements set forth in Chambers v. Mississippi. And second, the district court erred when it failed to take judicial notice of Articles 4 and 40 of the Fourth Geneva Convention, when these were relevant legislative facts. Your Honor, Mr. Mitrovic was accused of obtaining naturalization and citizenship by way of false representations as to material statements on his N-400 form. And to mount a defense to these accusations, his team of lawyers, investigators, and paralegals made multiple trips across the world, three times to Bosnia, in search of witnesses. Through the letters rogatory process and because of an existing agreement between the United States government and the country of Bosnia, we could depose witnesses that we found in Bosnia. But we could not. And did do that, right? In some instances, right? We were able to Although we were able to depose them, Your Honor, and just to make this completely clear, we could not, based on the agreement between the U.S. government and Bosnia, put these witnesses under oath, even those we deposed, or swear them in any fashion. And so throughout the course of these trips, we located over 20 witnesses, and these witnesses said that they had been in this prison camp in Bosnia, and part of the government's theory was that Mr. Mitrovic had been a guard in that camp. The camp had been open for a number of months, about three months, from May until roughly the end of September, October. And a number of these witnesses had been in the camp for the entire duration that the camp was open. And this was significant because there was a large quantity of individuals that moved through the camp. There was a transient nature to those individuals who passed through, and there were roughly 25,000 who were there at any given, or throughout the duration of the camp's existence, but maybe only a few thousand at one time. So to find witnesses that were there for the entirety of the three months was very significant. These witnesses confirmed with the defense team that they would be deposed. I was interested in the probative value of the evidence that you're saying was error to exclude. Is the probative value of a witness who said, I didn't see him there, is that the same probative value as witnesses who said, I did see him there? Yes, Your Honor, because the witnesses that we were precluded from introducing statements of were those that were in the camp for the entire duration of the camp. Of those that we were able to depose, they were there for, I think at most, eight days. We were able to depose three. The rest refused, some on the day of depositions, citing fear of retribution, retaliation, and they refused to go through with the process. And so we were precluded from introducing the statements of the remaining ten witnesses, four of whom were there for the entire three months. So we did not have the evidence of these individuals, the statements of these individuals who were there every day for three months, that they did not see Mladen Mitrovic in the camp. The government, in fact, in their closing, said it's not the defendant's burden of proof, but they did put on evidence, they put on witnesses, and of the three witnesses that were at the camp, one was there for all of eight days. But what we were precluded from introducing was the unique, substantive testimony of the witnesses who were there for three months, who said that every single day that they were there, they never saw Mladen Mitrovic. And that probative value was very significant, and that testimony was very unique. And although we were able to depose a few witnesses, those witnesses were only there for a matter of days, and therefore their testimony was not as compelling and it prevented us from putting forth a complete defense, a complete defense. So essentially we were in a position where the jury could have believed the government's witnesses. Did I see in the government's brief that the government indicated that it also had witnesses who were unavailable to it? And is that so? And if that's so, isn't that just the nature of gathering evidence? And sometimes you're going to be able to gather your evidence and sometimes you're not. Although it is absolutely true that in the course of gathering evidence and testimony and witnesses, sometimes you're not able to put it all together. But in this case, the due process violation, the fact that Mr. Mitrovic was denied his meaningful opportunity to present a complete defense, due process, the Fifth Amendment, this applies to defendants. So although it may be true that the government, in the course of this international prosecution, could not compel every single person to come to court here in the Northern District of Mr. Mitrovic's rights under the Constitution, because that applied to him in particular as the defendant. The testimony would have been relayed through the testimony of your investigator, who would then have had to testify as to whether the investigator found the particular witness credible or whether there were inconsistencies. There would be no videotape from which a jury could gauge the credibility of your witnesses. Is that correct? That is correct, Your Honor. And then the government could have cross-examined our investigator about his course of investigation. Did you ask this question? Did you ask if they saw every single person at the camp? You didn't. Was it chaotic at the camp? Was it crowded? It was. They could have gone through— Twenty years after the fact? That'd be one of the things they probably would have asked him, right? Well, yes, it was 20 years after the fact. And the entirety of the witness testimony, for the most part, with the exception of the agents and the investigators, came from memories and experiences from 20 years ago. Of course, there's a big difference in being beaten by someone and remembering it 20 years later versus being at a camp where there are thousands of prisoners and not remembering seeing a guard. Absolutely, Your Honor. But the government's witnesses were also inconsistent. There were issues with identification. A number of them did not identify Mladen Mitrovic. One said he believed Mladen Mitrovic was 100% a Serb, when in fact he was a Catholic Croat and married to a Bosnian. And so in light of these inconsistencies, the fact that we were precluded from introducing this compelling, crucial testimony denied us our right to a complete defense. The government's witnesses were a bit shaky on a number of facts. And although some identified him, some of the identifications were—the witness said that they only were 60% confident and some couldn't identify him at all. And one witness, in fact, wrote not him above the photo lineup that they were presented with as it related to Mr. Mitrovic's picture. So the inconsistent witnesses from the government alone could not have been enough to meet their burden of proof had we—were we given the ability to introduce the statements of these other witnesses. And so this, combined with the fact that the Court failed to take judicial notice of Articles 4 and 40 of the Geneva Convention, precluded us from putting together that full picture for the jury, threading that needle, and allowing us to put on not just a defense, but a complete defense. And in this case, Your Honor, as I was saying, the government— Y'all only thought that up late, right, about the Geneva Convention? I mean, that didn't—that was—you asked the district judge very late in the game to take judicial notice. True? It's true that we asked, I believe, on the fifth or sixth day of trial to take judicial notice, but this was after being aware that the government's witness, the expert, was going to testify generally to the conflict and the nature of Bosnia at that time. And during voir dire, we asked if, in fact, some of the forced labor practices of the country would have been in violation of humanitarian rights agreements. She said yes. And then we asked in violation of the Geneva Convention, and she said, I'm not familiar. And so we said, Judge, at this juncture, we would ask that you take judicial notice, because that was the one missing piece that we would need to present the complete defense and argue that Government's Exhibit 10 from the Ministry of Bosnia was a document that wasn't necessarily not what it purported to be, but perhaps there was a motive on behalf of the Bosnian government to not indicate on this document that this gentleman was in forced labor. But the convention was quite—is quite confusing, and it's not at all readily apparent that it would support the argument you make. And it's an abuse of discretion standard. In what way do you think the judge abused her broad discretion in excluding this particular piece of evidence? Because, Your Honor, in order to find under 403 that it's too confusing, the risk of confusion has to substantially outweigh the relevance. And here, the jury had been exposed to a number of witnesses who were testifying about the nature of the Red Cross coming in and what was going on in Bosnia at the time. And these two simple provisions of the convention, Articles 4 and 40, these succinct subsections of the convention, should have come in to allow us to argue about the motive and essentially the reliability of Government's Exhibit 10. We weren't asking for the entirety of the convention to come in. There seems to be more than a reasonable dispute, though, about whether they had any application to what was going on at this camp and particularly with your client. That is, whether they would have applied basically to this kind of intrastate war and whether they would have applied to someone who was a soldier, in essence, for Bosnia. No? And Your Honor, my time is up, but if I may briefly answer your question. Whether or not it specifically applied in this case should have gone to the weight and not the admissibility. The government could have argued that, but we believe that, first of all, it did apply, and if they believed it didn't, that goes much more to the weight of the evidence, not whether or not it should have come in. Well, it would go, would it not, to relevance? I mean, if in fact it's, what if the District Court said, I don't think it applies in this circumstance? Then it would be irrelevant, right? She didn't, Your Honor, and although I agree with you, she didn't. Her ruling was too confusing, and in light of the facts of this case, the risk of confusion was not substantially outweighing its relevance. Okay, thank you. Ms. Ralston. Good morning, Your Honors. May it please the Court, Sonia Ralston for the United States. I'd like to start by clearing up, I think, four matters about the record and then turn to the issues in the order presented by my colleague. The first is about the, whether the depositions were sworn, the foreign depositions that were actually taken. On the first page of each of those depositions, which were filed in the record, you'll see that the court reporter swore the witness. The second question is about how long the declarants who were not deposed were at the camp. She says there were four people who were there the whole time by the proffer in their brief, which is also in Document 164 in the record. It's at most three, and I think more likely two of those witnesses. And she said that one of the longest time one of the deposed witnesses was at the camp was eight days. It was actually 15. And the issue about the Geneva Convention comes up for the very first time at trial during the voir dire of the expert witness, and this is at transcript 913 to 916, where you'll see the district court, in fact, asking the defense whether they're trying to convert the government's expert into their own expert to testify about this issue. And the last point you'll find at the record at 1363 to 1364, which is the basis for the district court's ruling on the Geneva Convention issue, which is that the court didn't think it could get it right. It was too complicated. There wasn't enough notice. They could have brought an expert, and it was too confusing. So it's not just the confusion issue. The court has several grounds. That said, turning back to the witnesses here, I have two points that I'd like to make. The first is that she points out there were some inconsistencies in the identifications made by the government's witnesses, and the reason we know that is because those witnesses were on the stand, sworn under oath, and subject to cross-examination. If the government had had even a chance to talk to these declarants, we might be in a different position, but they were never—I mean, the government never even had an opportunity to interview these people. So all we have is the investigators say so, and they say, well, you could cross the investigator. But the quality of their investigation is not at issue, right? The reliability of the declarant's statements is what's at issue. And for all the reasons stated in our brief, as Your Honors pointed out before, there's just no reason to find these statements in any way reliable, which brings us to the second point, which is that the evidence in Chambers and Crane and these other cases that they're believe this piece of excluded evidence, like, bang, zoom, the defendant is not guilty. And that's just not what's going on here. And finally, about the Geneva Convention, as Your Honor pointed out, there was a lot of disagreement about whether it applied here and whether it's a legislative or adjudicative fact. This is a difficult case for everybody, right? It was a difficult case for the government to put together. It's a difficult case for the defendant to put together. You're talking about things that happened 20 years ago on land far, far away. And does that bear on the assignment of error on the witnesses, that is, that everybody was doing the best they could to present as much evidence as they could in the most reliable way and that perhaps the district court could have given more leeway to the defendant in the circumstances presented? So the rule that the district court was operating under, which is Rule 807, has one of its components as being in the interest of justice. And I think that here that speaks to the interest of justice and the purposes of the rules, which is ensuring that reliable, trustworthy evidence comes before the jury. In the district court, I think the record bears out, bent over backwards to give the This deposition issue went on for about three years, about trying to arrange these depositions and get all of the processes worked out. And the district court was very adamant in helping to make that happen for the defense. They never asked for compulsory process in Bosnia. Their letters rogatory multiple times said it was going to be voluntary, and those citations are in our brief. So the judge here was doing everything she could, I think, to make this, to give the jury an opportunity to make his case. But it still has to be reliable evidence. We can't just be putting in whatever the investigator wants to say. If that's going to be the case, then why bother having a trial? They could call their investigator, and we'll call our agent and call it a day. But that's not what the rules of evidence envision, for a good reason, because it's not reliable. We want juries to be fact finders, which means they need facts in front of them. That can't be just speculation. So although I think there was some leeway given here, the fact that it's a complicated case, I mean, there are lots of complicated cases, Your Honor knows, and the fact that a case is complicated doesn't mean the rules of evidence go out the window. Yeah, and the argument here is that the exclusion of this evidence was unconstitutional, not just some ordinary kind of trial error, but the reliance on the hearsay rule here in this circumstance would have been unconstitutional. That's a big deal, right? That's a very high bar to meet, Your Honor, and it brings us back to the test under Chambers and Crane and these other cases, especially if you look at South Carolina v. Holmes, where the Supreme Court, in a unanimous opinion, essentially blesses the federal rules and their flexibility as complying with the Constitution. In that case, they're talking specifically about 403, but the way that Justice Alito, for the unanimous court, is talking about the federal rules with all of the discretion that they give to district court judges. Is that ipso facto? In other words, could you never have, if somebody, if the district judge complies with the federal rules of evidence, is it ipso facto constitutional? So we make that argument in our brief, and I think if you're talking about the rules where there's like the hearsay rule 807, where there's this catch-all rule that gives the we're talking just about the Chambers-Crane-Holmes line of right to present a defense and not some other specifically enumerated right. But the court doesn't have to reach that argument to resolve this case. There are many more narrow grounds on which the court can go here. And just to sum up on the Geneva Convention issue, I want to reiterate that the district more than several months before trial, like two or three months before the trial, and it started that process of contacting the expert who was going to translate and explain the Bosnian law more than 18 months before trial. Can you help me? I'm having some difficulty trying to figure out what it means for the fact to be in dispute, okay, for purposes of the rule about judicial notice. So it doesn't seem to me to be in reasonable dispute that there are these articles of the convention, right? Nor what they say. That's correct. Is that it? Or does it have to be something more than that? It has to be something more, Your Honor. And the Rivera-Torres case from the First Circuit is the best example that we've got on that. You know, that's a case where there was this Puerto Rico law. There was no dispute about what the text of the law said. But the law, if followed, would have tanked the plaintiff's case. Essentially, it would have been directing a verdict for the defendant. And the First Circuit says that to read judicial notice of the law would imply that the law was followed. The district court said, in my experience, this law is often not followed. And so the district court declined to take judicial notice. The First Circuit upheld that because it's not just the text of the law that matters. It's the use that you want to put to it. And here, they didn't just want the abstract of the convention. They wanted to use it to say that it applied to him. It applied to this conflict. It covered him. It covered his labor. And there are several reasons that we lay out in our brief about why that's not true or might not be true, that it's highly disputed. And that's why an expert witness would have been— So long as those matters are in reasonable dispute, the district court would be within its discretion in not taking judicial notice. That's your argument? Yes, Your Honor. Regardless of whether it's a legislative or an adjudicative fact, it has to be essentially undisputed to be a subject of judicial notice. And here, the fact of whether this applied to him, whether it applied to this conflict, and whether it had any usefulness to the jury was in a great deal of dispute. Yeah, I don't think there's any doubt that the facts that we're talking about, whether it applied to this conflict, whether it applied to his labor, all of that would have to be adjudicative fact, right? Yes, I think so. And moreover, the purpose that they want to use this for was to impeach the credibility of Government Exhibit 10. But they ignore the fact that Exhibits 9 and 11 were even stronger evidence of the point that Exhibit 10 was presented to prove, which is that he was a member of the VRS. Exhibit 9 is his own request for veterans' benefits. That's his own words saying, I was a veteran, give me this money. And then Exhibit 11 is the government document giving him those benefits. So, when those are in evidence and undisputed, it doesn't really make sense that any additional impeachment to Exhibit 10 would have changed the outcome. And moreover... It may be a fine point, but following up on Judge Pryor's question, is the issue of whether you take judicial notice also, in effect, a decision as to whether the evidence is probative or the use to which it's going to be put? Or do you take judicial notice and then decide whether it's going to be relevant or probative? It has to be at least somewhat relevant or probative to be a subject for judicial notice. I mean, otherwise, there's no point, right, in taking judicial notice of something that's irrelevant to the case. And that's what the First Circuit is talking about in Rivera-Torres is to take judicial notice implies that this law applied here and that it was regularly followed. Relevance is a threshold requirement for any evidence under the federal rules, right? Of course, and as is Rule 403. The last point I want to make here is that he still made this argument, right? Essentially, his argument is that slavery is bad, and so the Bosnian government wouldn't have owned up to slavery. Well, that's not really an argument that needs a whole lot of bolstering to make. You know, slavery is obviously bad, and he made this argument in closing. So the elimination of judicial notice didn't even hamper the defense that was presented at trial, unless there are further questions. Thank you. Thank you. Ms. Palmer, you have five minutes. Your Honor, under the Due Process Clause, criminal prosecutions, as we know, must comport with these ideas of fundamental fairness. And here, the proceedings simply were not fair in light of the evidence and testimony that we should have been able to put on. First, as to— What about your adversary's argument that the Chambers line of cases really deal with wholly exculpatory kind of evidence and is wholly different from the kind of evidence we're talking about here? Well, Chambers and those line of cases, Your Honor, stand for the proposition that you put forth, that regardless of rules of procedure and rules of evidence, we have these constitutional considerations that emanate beneath all of it. And I think Chambers in particular is interesting because it's not that this one rule of evidence was unconstitutional. It was the interplay of these two rules. And so therefore, it's not just that this rule, 807, was wrong and the judge didn't get it right, which, first of all, in her ruling, she doesn't even say 807. She doesn't necessarily couch it as an evidentiary ruling. But it's not so much that the rule itself is problematic. And I know the government spends so much time in their briefs saying that the rules are constitutional. That's not what we're arguing. What we're saying is that in light of the rules of procedure and evidence, we still have to consider these constitutional underpinnings. And that was our argument in our motion. That's why we said, first of all, it should be allowed under 807, but second of all, it should be allowed under the Constitution. I'm not sure I got an answer to my question, which was, it seemed to me that your opponent's argument is that Chambers in that line of cases deals with wholly exculpatory kind of evidence. And the application of a rule that would have barred evidence that if believed to have meant that the defendant is not guilty. And it strikes me as correct to say your evidence is far weaker than that. But, Your Honor, in Chambers, what the court discusses is that these statements have indicia of reliability. And here we also had the indicia of reliability. And the exculpatory nature of the statements was similar for us because we were precluded from introducing testimony from 10 witnesses, statements from 10 witnesses who were at the camp the entire time. Well, let's say that we were to believe every one of those witnesses that they did not see your client and the entire time they were there. That does not mean that he's not guilty. Well, Your Honor, we don't know because those statements didn't come in. And what I would like to... No, no, no. You understand the evidence we're talking about in Chambers where someone admitted to a murder, right, if believed meant that the defendant was not guilty, right? That's not what we're talking about here, right? But what we are talking about here are a number of witnesses who were there the entire time. We had no other way to get into that. With the amount of people that passed through the camp, it was a miracle we could even find these people. To find somebody who was there for the entire duration of three months was compelling and, we believe, exculpatory evidence. When all we were able to put on were three witnesses, we were able to depose three witnesses or perhaps four. One was actually a wife of somebody in the camp who said that she visited the camp. That's where we got the number four from. But these individuals were there for only a matter of days. And the government made much of that in their closing argument. And I would also like to emphasize that it's the government's burden beyond a reasonable doubt to prove that this is not a harmless error. And they proceeded on four different theories, one with kind of a subpart that... Only if it is an error. That is correct, yes. But if Your Honors do find that it's an error, because of how they Mr. Mitrovich lied on his form, there's no way for us to look at this verdict form that just had one unifying whether he lied or did not lie on the N-400 form and say, oh, it wasn't this error by the court that contributed to the verdict obtained. And so because we believe that this exculpatory, critical, crucial evidence was erroneously precluded at trial, we believe Mr. Mitrovich was denied his opportunity to present a complete defense and his conviction should be vacated. Thank you. Thank you, Ms. Palmer. Case was well argued, and we now have it. And we'll move to the next case, United States v. Shabazz.